# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| TAMMY P., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 24-cv-4054-CJW <br><br> **REPORT AND RECOMMENDATION** |

Tammy P. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34 and application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. Sections 1381-85. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1969. (AR[1] at 245.) She is a high school graduate. (*Id*. at 288.) Claimant allegedly became disabled due to esophagitis, duodenitis, anxiety disorder, major depression disorder, enteritis, severe degenerative disc disease, anemia, constant stomach pain with inflammation and chronic diarrhea, GERD, and chronic external and internal hemorrhoids. (*Id*. at 107.) Claimant's onset of disability date is January 10, 2021. (*Id*.) On March 28, 2022, Claimant protectively filed her applications

---

[1] "AR" cites refer to pages in the Administrative Record.

1

for DIB and SSI. (*Id*. at 45, 245, 248, 252.) Her claims were denied originally on February 20, 2023 (*id*. at 117-18) and were denied on reconsideration on May 23, 2023. (*Id*. at 129, 152.) A hearing was held on October 31, 2023, with Claimant and her attorney Wilford Forker[2] appearing by online video before Administrative Law Judge ("ALJ") Chris Yokus. (*Id*. at 79-106.) Vocational Expert ("VE") Stephen Schill also appeared at the hearing telephonically. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on December 12, 2023. (*Id*. at 45-58.)

Claimant requested review and the Appeals Council, after considering additional evidence, denied review on September 4, 2024.[3] (*Id*. at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On October 24, 2024, Claimant timely filed her Complaint in this Court. (Doc. 1.) On February 24, 2025, all briefing was completed, and the Honorable C.J. Williams, Chief United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage

---

[2] Claimant is represented by attorneys Wes Kappelman and Hugh M. Field on the instant appeal.
[3] The Appeals Council initially denied review on March 13, 2024, but set that decision aside to consider additional evidence. (AR at 1, 26-29.)

in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled.

*Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. §§ 404.1520(c), 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. §§ 404.1521(b), 416.921(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* §§ 404.1545(a), 416.945(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior

4

to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.  *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2024. (AR at 47.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from her alleged onset date of January 10, 2021. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: degenerative disc disease of her lumbar spine, depressive disorder, and anxiety disorder. (*Id.* at 48.) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 49.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.16 (lumbar spinal stenosis), 12.04 (depressive disorders), and 12.06 (anxiety disorders). (*Id.*) The ALJ also determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 49-51.) At the fourth step, the ALJ determined that Claimant had the following RFC:

5

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with the following limitations: she is able to climb ladders, ropes, or scaffolds occasionally and to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs frequently. The [C]laimant should have no concentrated exposure to vibration or hazards such as unprotected heights. She is able to understand, follow, and complete simple, repetitive, routine tasks and instructions in jobs with no more than occasional contact with the general public and no more than occasional changes in the work setting.

(*Id.* at 51.) Also at the fourth step, the ALJ determined that Claimant was unable to perform her past relevant work. (*Id.* at 56.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including photocopy machine operator, mail clerk, and housekeeper. (*Id.* at 57.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 58.)

## B. The Substantial Evidence Standard

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone

6

of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III. DISCUSSION

Claimant alleges that the ALJ's decision and the Appeals Council's determination contain reversible error by (A) the ALJ failing to properly evaluate the medical opinions of Brenda Cain, PMHNP, Claimant's psychiatric medication manager; (B) the Appeals Council failing to take Mayo Clinic evidence of Claimant suffering from anemia into consideration when reviewing the ALJ's decision; and (C) the ALJ improperly determining that Claimant's abdominal pain was nonsevere. (Doc. 6.)

7

### A. Brenda Cain's Medical Opinion

#### 1. Parties' Arguments

Claimant points out that under the regulations an ALJ is required to "evaluate 'the objective medical evidence and supporting explanations' of the medical source while addressing why an opinion was found persuasive or unpersuasive." (Doc. 6 at 23.) (Quoting 20 C.F.R. § 404.1520c(1)). Claimant asserts that the ALJ, "by solely focusing on the objective medical evidence Ms. Cain cited and ignoring her explanations for her opinions, failed to properly evaluate the supportability factor." (*Id.*) Claimant also argues that "[w]hile addressing the consistency factor, the ALJ leaves out that Ms. Cain's opinions were largely consistent with the consultative examiner's opinions." (*Id.*) Claimant concludes that this matter should be reversed and remanded because the ALJ failed to "articulate sufficient reasons for finding Ms. Cain's opinions not persuasive." (*Id.*)

The Commissioner argues that the ALJ "properly explained finding . . . Cain's opinion unpersuasive." (Doc. 8 at 5.) The Commissioner maintains that "[a]fter summarizing the opinion in detail, the ALJ accurately found . . . Cain's cursory clinical signs insufficient to support the extreme limitations." (*Id.* at 6.) Further, the Commissioner points out that Claimant "does not supply any reasoning" for claiming that Cain's opinion is consistent with the consultative examiner's opinions. (*Id.*) The Commissioner concludes that the ALJ "certainly articulated why he was unpersuaded by . . . Cain's opinion and the Court should dismiss [Claimant's] cursory arguments to the contrary." (*Id.* at 8.)

#### 2. Pertinent Medical Evidence

On June 26, 2023, Cain provided a "Mental Medical Source Statement" for Claimant. (AR at 879-883.) Cain diagnosed Claimant with major depressive disorder, generalized anxiety disorder, and ADHD. (*Id.* at 879.) Cain noted that Claimant "is

8

currently being treated with medication management" and Claimant "reports she had done well with [medication]." (*Id.*) Cain opined that Claimant "suffers from a depressed mood related to her medical conditions and has been unable to work," causing Claimant "stress" and "financial hardship." (*Id.*) Claimant reported that she had "been on multiple medications for her depression and nothing has worked." (*Id.*) Cain opined that Claimant's prognosis was poor. Cain identified the following signs and symptoms for Claimant: depressed mood, sleep disturbance, decreased energy, feelings of guilt or worthlessness, thoughts of death or suicide, panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences, disproportionate fear or anxiety about at least two situations, frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks, detachment from social relationships, distrust and suspiciousness of others, and easily fatigued. (*Id.* at 880.) Cain opined that Claimant would be seriously limited in the ability to perform semi-skilled and skilled work as follows: understanding and remembering detailed instructions, carrying out detailed instructions, dealing with stress of semi-skilled and skilled work, and traveling in unfamiliar places. (*Id.* at 881.) Cain stated that Claimant "has increased anxiety related to returning to work due to her current medical conditions." (*Id.*) Cain also noted that Claimant's "anxiety causes muscle tension and makes her pain worse." (*Id.*) Further, Cain determined that Claimant would be seriously limited in the ability to perform unskilled work as follows: remembering work-like procedures, working in coordination with or proximity to others without being distracted, making simple work-related decisions, and performing at a consistent pace without an unreasonable number and length of rest periods. Cain also opined that Claimant would be unable to meet competitive standards for unskilled work as follows: maintaining attention for a two-hour segment, sustaining an ordinary routine without special supervision, responding appropriately to changes in a routine work setting, and dealing with normal work stress. Finally, Cain

9

opined that Claimant would have no useful ability to function in the areas of maintaining regular attendance and being punctual within customary, usually strict tolerances and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.* at 882.) Cain identified the following work demands that Claimant would find stressful: working within a schedule, making decisions, completing tasks, being criticized by supervisors, getting to work regularly, and remaining at work for a full day. (*Id.* at 883.) Cain opined that Claimant's impairments would cause her to miss more than four days per month if she attempted to work a full-time job. (*Id.*) Cain concluded that Claimant "has become increasingly depressed and anxious due to her health issues" and "she has tried multiple . . . medications in the past and nothing has worked." (*Id.*)

### 3. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Section 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id*.

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20

10

C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### 4. *Analysis*

In considering Cain's opinions, the ALJ determined that:

> [T]he claimant's psychiatric medication manager, Ms. Cain, NP, opined that the claimant is seriously limited in her ability to understand, remember, and carry out detailed instructions, deal with the stress of semiskilled and skilled work, travel in unfamiliar place, remember work-like procedures, work in coordination with others, make simple work-related decisions, and perform at a consistent pace; unable to meet competitive stands in her ability to maintain attention for two-hour segments, sustain an ordinary routine without special supervision, respond appropriately to changes in a routine work setting, deal with normal work stress; and no useful ability to maintain regular attendance and complete a normal workday and workweek (26F). Ms. Cain further opined that the claimant would miss more than four days of work per month (26F).
>
> I find Ms. Cain's opinion unpersuasive. The clinical findings identified in support of the opinion consisted of the claimant's depressed mood (26F). This evidence is insufficient to support the drastic limitations posited by Ms. Cain. Further, the claimant's treatment notes with Ms. Cain include observations of the claimant's anxious affect, but logical, organized, and goal-directed thought process and fair insight, judgment, and impulse control (17F). This evidence is inconsistent with the opinion. Moreover, the claimant's affect, memory, attention, concentration were normal or intact on mental status examinations (6F-7F, 13F, 17F-18F, 24F, and 37F). After careful consideration of the evidence cited by Ms. Cain and the record in its entirety, I must find this opinion unpersuasive.

(AR at 56.) Additionally, the ALJ made the following determinations based on the ALJ's overall review of Claimant's medical record:

> [T]he medical evidence before me is not consistent with debilitating symptoms or limitations. On mental status examination, the claimant demonstrated average intelligence, a logical and organized thought process, and normal thought content and cognition (2F, 11F, 7F, and 17F). She was not easily distracted, with fair impulse control (2F and 17F). Moreover, the claimant's memory, attention, and concentration were all normal or intact (17F-18F and 24F). She was observed to be pleasant and cooperative: the claimant's mood and affect were normal and appropriate (6F-7F, 13F, and 37F). Although the claimant was anxious at times, her treatment providers did not document observed panic attack symptoms. Her behavior was normal (16F). There is simply an absence of objective medical evidence in the record supporting the claimant's allegations of serious difficulty interacting with other people, focusing, or other inability to complete basic mental work activities.
>
> Finally, the claimant's reports to healthcare providers were not entirely consistent with the allegations made in support of the instant application for benefits. She reported doing well in 2021 (2F). The claimant was looking for work, which had ended due to COVID (2F). She described sleeping well, a good appetite, and a daily routine (2F). In 2022, the claimant described stable symptoms of depression and anxiety (13F). She denied problems with attention or concentration at the Consultative Examination (11F). The claimant was able to shop, drive, do household chores, and handle her finances (11F). These reports to healthcare providers indicate that her mental health symptoms are not as limiting as alleged.

(*Id*. at 54.) In support of these conclusions, the ALJ thoroughly reviewed Claimant's medical history and pointed to evidence throughout the record, spanning from April 2020 through November 2023, where among other things, Claimant's mental status was normal and intact, mood and affect were appropriate, behavior was normal, and thought processing was normal. *See id*. at 402, 405, 408, 411, 414, 598, 651, 656, 728, 767, 781, 784, 1085, 1090, 1095, 1100, 1108, 1119, 1126. The ALJ also cites to the Psychiatric Evaluation that Claimant underwent in November 2022, where Denise Marandola, Ph.D., determined that Claimant was able to remember and understand instructions, procedures, and locations. Dr. Marandola also found that Claimant had a

12

Case 5:24-cv-04054-CJW-MAR   Document 11   Filed 12/29/25   Page 12 of 20

history of good judgment and was able to carry out instructions even though at times she could struggle to maintain attention and concentration. *See id*. at 694.

Based on the foregoing, I find that the ALJ both properly considered Cain's opinions and properly addressed the consistency and supportability of Cains's opinions. The ALJ also properly supported the conclusions that Cain's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Cain's opinions, and I recommend that the District Court affirm this part of the ALJ's decision.

## B.     *Evidence Submitted to the Appeals Council*

### 1.     *Parties' Arguments*

Claimant argues that a report from the Mayo Clinic[4] diagnosing Claimant with anemia and provided to the Appeals Council as additional evidence should be considered by this Court in determining whether the ALJ's disability determination was supported by the record as a whole even though the ALJ did not have this report when making the ALJ's decision. (Doc. 6 at 23-25) (citing *Cunningham v. Apfel*, 222 F.3d 496 F.3d (8th Cir. 2000). Claimant contends that the Mayo Clinic report warrants "questioning the agency medical consultant conclusions and calling a medical expert to review the file and determine how the combination of [Claimant's] impairments, including her anemia,

---

[4] In the reply brief, Claimant specifically states that "[t]he focus in this civil action in this argument was specifically on the Mayo Clinic note indicating disabling iron deficiency anemia on February 8, 2024. . . . The other notes . . . were ignored in the principal briefing's argument." (Doc. 9 at 4.) Accordingly, I will limit this issue to consideration of the Mayo Clinic report that was generated on February 8, 2024.

13

limited her ability to work in the months after her March 2022 normal iron labs leading up to her December 2023 hearing decision." (*Id.* at 25.)

The Commissioner argues that Claimant "has the burden of proof" and "has not presented any medical evidence establishing anemia as a severe impairment during the relevant time." (Doc. 8 at 9.) The Commissioner also points out that Claimant has "not present[ed] individualized medical evidence linking her anemia to any symptoms before December 2023." (*Id.*) Further, the Commissioner asserts that the "additional evidence suggested an impairment that would not meet the 12-month duration requirement for a medically severe impairment because it would respond quickly to treatment." (*Id.* at 10-11.)

### 2. *Pertinent Medical Evidence*

The Mayo Clinic report is unsigned and undated. (AR at 37-41.) In small print at the top of each page of the report there is a notation that the report was "Generated on February 8, 2024." (*See id.*) According to the report, Claimant was seen at the Mayo Clinic for "evaluation of iron deficiency and alpha thalassemia." (*Id.* at 37.) The report states that:

> According to [Claimant], she was diagnosed with iron deficiency anemia around 9 years ago when she saw a local hematologist. About the same time she was also diagnosed with alpha thalassemia. I believe it was alpha thalassemia trait although I could not find a hematology note. . . . Initially she had oral iron replacement therapy but she could not tolerate due to GI side effects. Subsequently, she had 1 or 2 iron infusions which she tolerated. However, upon diagnosis of alpha thalassemia she was advised not to take any iron replacement therapy. It was unclear to me whether she had evaluation for potential blood loss at that time.

(*Id.*) The report also states that laboratory tests from an undated time showed anemia. (*Id.*) Upon examination, the author of the report diagnosed Claimant with anemia iron deficiency and alpha thalassemia trait. The author opined "[a]t the moment, it is not

clear to me why she is iron deficient. She does not have any obvious blood loss and she has not had any menstrual periods for over a year. She does not have any history of menorrhagia as well or blood donation." (*Id.* at 41.) The author stated that "[a] lot of her symptoms including fatigue, dyspnea on exertion, foggy brain, lack of appetite, hair loss, and perhaps even photosensitivity may potentially be attributed to severe iron deficiency." (*Id.*) The author opined that "[w]hile she may have other comorbidities to potentially explain some of her other symptoms, I feel that replacement of her iron store and improving her hemoglobin will provide some or even a major relief to her symptoms. She is disabled by this severe iron deficiency anemia." (*Id.*) Claimant was scheduled for an IV iron infusion. (*Id.*)

### 3. *Relevant Law*

In *Cunningham v. Apfel*, the Eighth Circuit Court of Appeals explained the effect of new evidence submitted to the Appeals Council for a reviewing court:

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

222 F.3d 496, 500 (8th Cir. 2000); *see also Van Vickie v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new

evidence that was considered by the Appeals Council"); *Nelson*, 966 F.2d at 366 ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). In *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court.

*Id*. at 622.

### 4. *Analysis*

Here, Claimant relies on an unsigned and undated report from the Mayo Clinic which was not provided to the ALJ. This report states it is "unclear" why Claimant is iron deficient. (AR at 41.) The report also states that Claimant's symptoms "may potentially be attributed" to iron deficiency. (*Id.*) The author of the report opined that "I feel that replacement of her iron store and improving her hemoglobin will provide some or even a major relief to her symptoms." (*Id.*) This report does not support Claimant's request for remand. As the Commissioner correctly points out, Claimant has not presented any medical evidence which establishes anemia as a severe impairment during the requisite time period. Similarly, Claimant has not presented evidence suggesting that her anemia is related to any of her symptoms before December 2023, the end of the requisite time period. Finally, there is no evidence as to whether treatment for Claimant's anemia improved any of her symptoms or how she responded to treatment. This undated and unsigned single report without additional evidence does not necessitate

remand. Even with the Mayo Clinic report as a part of the administrative record, the ALJ's decision is supported by substantial evidence on the record as a whole. *See Nelson*, 966 F.2d at 366. Accordingly, I recommend that the District Court affirm the ALJ's decision on this issue.

## C.     *Nonsevere Impairment*

### 1.     *Parties' Arguments*

Claimant argues that "[t]he ALJ erred by labeling [Claimant's] IBS and abdominal pain as nonsevere and failing to evaluate this important part of her claim in the hearing decision, which warrants remand." (Doc. 6 at 27.) The Commissioner argues that "[t]he ALJ did not find [Claimant's] abdominal pain either severe or nonsevere because 'pain' is a symptom, not a medically determinable impairment." (Doc. 8 at 13.) The Commissioner points out that the ALJ considered evidence related to IBS and GERD and determined that, based on the evidence, IBS and GERD "did not impose more than a minimal limit on [Claimant's] work abilities." (*Id.* at 14.)

### 2.     *Relevant Law*

As discussed above, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities.") (Citing *Bowen*, 482 U.S. at 153 (O'Connor, J. concurring)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Kirby*, 500 F.3d at 707 (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). "It is the claimant's burden to establish that his [or her] impairment or combination of impairments are severe." *Id.*

(citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id*. (citations omitted).

### 3. *Analysis*

In the decision, the ALJ determined that Claimant's IBS and GERD were medically determinable nonsevere impairments. (AR at 48.) Specifically, the ALJ explained that:

> The claimant reported abdominal pain with diarrhea or constipation (3F). She was either not tender, or minimally tender, on examination of her abdomen, however (3F-5F and 35F). The claimant's bowel sounds were normal (3F and 5F). Her EGD and colonoscopy showed mild reflux esophagitis and mild gastritis, chronic and inactive (3F and 5F). The claimant's endoscopy was described as benign (5F). She was prescribed omeprazole for GERD (3F). For the claimant's IBS symptoms, she was prescribed Amitiza and amitriptyline and advised on a FODMAP diet (4F and 7F). However, it is not clear that she attempted these treatments, which would reasonably be expected if the claimant's symptoms were as debilitating as alleged (4F and 7F). . . .
>
> The record does not include evidence of emergency or urgent care treatment for digestive or abdominal symptoms. In sum, the record supports my finding that the claimant's IBS and GERD do not impose more than minimal limitations on her ability to perform basic work activities.

(*Id.*) The ALJ's conclusion that upon examination Claimant's abdomen was not tender or minimally tender, her bowel sounds were normal, and endoscopically things were benign is supported by the cited record. *See* AR at 432, 455, 521, 524, 526, 528, 533, 655, 1075. Furthermore, in April 2022, Claimant was referred to Dunes Pain Specialists for her abdominal pain. The medical provider, Lindsey Dutler, NP-C, recommended non-narcotic medication to treat Claimant's pain even though Claimant was requesting narcotic medication, believing such medication was the only medication that had helped

her in the past.  Dutler concluded "[t]he plan for now will be to follow up as needed, as it is unclear if [Claimant] plans to pursue any of the above options."  (*Id.* at 514.)  Moreover, in comparison, Claimant's citations to medical records do not support a finding that Claimant's abdominal pain, IBS, and/or GERD constitutes a severe impairment.  Claimant simply points out that Claimant was treated for pain, IBS, and GERD, and the record demonstrates that treatment was limited to medication and diet, consistent with the ALJ's determination.  To the extent that Claimant argues that the ALJ's decision "assumes [Claimant] never attempted Amitiza and the later-prescribed amitriptyline," this argument is a non-starter.  (Doc. 6 at 26.)  Contrary to Claimant's framing, the ALJ's decision does not assume that Claimant "never attempted" prescribed treatment, instead, the ALJ stated "it is not clear" that Claimant attempted these treatments, which is consistent with Dutler's conclusion that it was "unclear" whether Claimant planned "to pursue" medication and diet options.  (Doc. 6 at 26; AR at 514.)  Additionally, Claimant's suggestion that her eating habits which helped manage her abdominal pain "could have contributed to the iron deficiency anemia issues" is also a non-starter.  (Doc. 6 at 27.)  I can find no evidence in the record connecting Claimant's eating habits and anemia and Claimant cites no evidence of such a connection.

Based on the foregoing, I find that the ALJ properly determined that Claimant's IBS and GERD were nonsevere impairments.  Claimant did not meet her burden to establish that her IBS and GERD were severe impairments.  Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole.  *See Guilliams*, 393 F.3d at 801.  It is not for this Court to reweigh evidence.  Accordingly, I recommend that the District Court affirm this part of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 29th day of December, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa